**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4129-18T2

IN THE MATTER OF
THE ESTATE OF
GEORGE R. SCHELLER,[1]
    Deceased.

_____

Submitted April 27, 2020 – Decided May 13, 2020

Before Judges Rothstadt and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Morris County, Docket No. P-000508-13.

Nagel Rice LLP, attorneys for appellant Robert D. Borteck (Jay J. Rice, of counsel and on the briefs).

Torzewski & McInerney, LLC, attorneys for respondent Thomas N. Torzewski, Esq. (Jennifer Lynne McInerney and Thomas N. Torzewski, of counsel and on the brief).

PER CURIAM

---

[1] The record suggests that the order that is the subject of this appeal may have incorrectly designated the decedent as George R. Scheller instead of George E. Scheller.

Robert D. Borteck, P.C. (the Borteck firm) appeals from an order of the Probate Part entered on May 10, 2019, declaring the Estate of George R. Scheller (the estate) insolvent; approving the first and final accounting prepared by Thomas N. Torzewski, Esq., the court-appointed administrator of the estate and former court-appointed guardian of George R. Scheller (the decedent); and identifying the equally situated priority creditors of the estate, which did not include the Borteck firm. The Borteck firm appeals, principally seeking priority of its claim for legal services rendered in connection with Torzewski's guardianship services. Having reviewed the record and considered the governing statute, we conclude that the probate judge correctly identified the equally situated priority creditors. Accordingly, we affirm.

We discern the following facts from the record. In life, the decedent lived in Long Valley on a sixty-acre parcel of real property (the property), about two-thirds of which was located within the Preservation Area of the Highlands. The property was owned by the decedent's holding company, Scheller Properties, LLC (Scheller Properties).

After the decedent's wife passed away in 1999, his son Robert moved onto the property. On August 10, 2001, the decedent appointed Robert his attorney-in-fact by executing a general durable power of attorney (POA). Thereafter,

Robert began to abuse his position by wasting the decedent's cash assets and significantly encumbering the property. He mortgaged the property twice, in 2005 for $525,000 and in 2006 for $299,000, but failed to pay the mortgages, causing both mortgage creditors to institute foreclosure proceedings during the decedent's life.

During the winter of 2007-2008, a man named Ken Ryan entered the decedent's life to assist with a plumbing problem on the property. After Robert passed away in 2009, Ryan took responsibility for the decedent's financial affairs, and on April 16, 2009, the decedent appointed Ryan attorney-in-fact by executing a POA. On the same day, he also assigned Ryan a fifty-one percent interest in Scheller Properties for no consideration. Thereafter, Ryan began operating various businesses on the property and allowed his friends to use the property as well. Like Robert, Ryan neglected to resolve the mortgage defaults, pay the property taxes, utilities, and insurance, and maintain the property. Consequently, it fell into disrepair.

During Ryan's tenure on the property, David Brady, Esq., who was hired to represent the decedent in one of the foreclosure actions, met with the decedent and Ryan. Upon meeting them, Brady became suspicious of the validity of the POA naming Ryan as the decedent's attorney-in-fact, so he commenced a

3

guardianship proceeding. On May 13, 2010, a judge appointed Torzewski plenary guardian of the decedent. At that time, Torzewski was a non-equity partner at the law firm Borteck and Torzewski, LLP (B & T).

As the decedent's guardian, Torzewski commenced several actions on his behalf, including a suit against Ryan to obtain an accounting of Ryan's actions as the decedent's attorney-in-fact. On June 17, 2011, a judge revoked the transfer of Scheller Properties to Ryan and declared the decedent the sole owner. However, despite this decision and numerous other court orders, Ryan and his friends continued using the property without paying rent or taxes or maintaining the property. According to the Borteck firm, Torzewski hired B & T to assist him in his role as guardian, and he submitted various invoices to the guardianship estate on B & T's behalf for services rendered.[2]

During 2012, Torzewski's relationship with law partner Robert D. Borteck soured. By the end of the year, Torzewski resigned from B & T, and he later opened his own practice.

On January 26, 2013, the decedent died testate, and on April 2, 2013, Torzewski was appointed administrator of the estate. Thereafter, Torzewski

---

[2] The fees owed to the Borteck firm were somewhere between $170,000 and $180,000.

initiated an eviction action and succeeded in having Ryan and his friends removed from the property. He then began marketing the property for sale.

On October 31, 2013, the Borteck firm filed a complaint against Torzewski in his capacity as the decedent's guardian, seeking an accounting of the guardianship estate, attorney's fees, a lis pendens on the property, and the appointment of a disinterested successor administrator. The parties appeared on December 13, 2013, for oral argument. The judge then issued an oral decision, denying the Borteck firm relief on its requests for an accounting, the lis pendens, and the appointment of a new administrator. As to the request for fees, Torzewski agreed to provide the Borteck firm with a copy of the New Jersey estate tax return, and the judge ordered Torzewski to review the work he performed as guardian while working at B & T. On September 23, 2014, the judge entered a written order memorializing his decision.

Thereafter, Torzewski continued marketing the property. On September 30, 2014, the Judge referred the matter to mediation. Torzewski explained that he, Brady, and the mortgage creditors had monthly conference calls and regularly updated the judge, who continued to push for a resolution involving a sale of the property. Torzewski sought to sell a development easement associated with the property to the Morris County Agriculture Development

Board (ADB). The ADB obtained an appraisal of the property, which estimated the value of the easement at $12,300 and the Highlands section of the property, less the value of the easement, at $275,500. Torzewski ultimately negotiated to sell the easement to the ADB for about $889,065, reflecting the pre-Highlands Act property valuations that were set to expire in or about 2015. He then sold the property to a farmer for $325,000.

As a result of these transactions, plus the decedent's remaining assets, the estate consisted solely of $1,214,758.93 in cash. Torzewski settled the outstanding mortgages, which were in excess of $1,600,000, for $1,041,028.56, and he used some of the remaining funds to pay Sal LaGreca, LLC for post-death accounting fees; Brady & Correale, LLP for legal fees related to the initial foreclosure action and the property transactions; realtors and the title company for fees and commissions; the Washington Township Board of Taxation for outstanding tax liens; and himself for fees pursuant to the mortgage settlement agreement and for other estate administration expenses.

After these disbursements, $15,901.60 remained in the estate. Several liabilities remained unpaid, including several incurred for post-death services: Torzewski's sought $10,532.62 for estate administration costs and $42,295.18 for his statutory corpus commission; Brady and Correale, LLP's sought $225 for

attorney's fees; and Sal LaGreca, LLC's sought $1560 for accounting fees. These amounts, totaling $54,612.80, substantially exceeded the remaining value of the estate.

On May 1, 2018, Torzewski filed a verified complaint to declare the estate insolvent and to approve the first and final accounting. The Borteck firm filed an answer and exceptions to the accounting, objecting to the sale of the property, disbursements made to certain creditors after the property sale, and the proposed use of the remaining funds. The parties appeared before Judge Stuart A. Minkowitz on June 28, 2018, and on May 10, 2019, the judge issued an order and statement of reasons, declaring the estate insolvent, approving the estate's first and final accounting, and identifying the equally situated priority creditors.

First, the judge approved the first and final accounting and declared the estate insolvent, explaining that the Morris County Surrogate had audited the accounting and determined that "[t]he figures as presented are commensurate with the nature of the [e]state, attendant circumstances, and applicable statutes."

Next, the judge discussed Torzewski's sale of the property. He noted that the prior judge told the parties during the December 13, 2013 hearing that "nothing's [going to] happen to this property without a court order," and "[t]here's not [going to] be a sale without a court order," but he found that "[t]his

purported restraint was not supported . . . with any findings . . . nor was it reduced to a formal order, and thus, it was simply dicta."  He also mentioned that "Torzewski's action resulted in a substantial benefit . . . far beyond any anticipated results" and added that "the transfer of the property is largely of no moment here as it does not change the status of [the] creditors."

Finally, the judge considered the Borteck firm's creditor status.  Relying on N.J.S.A. 3B:22-2, he found that as a pre-death claim, the Borteck firm's claim was subordinate to claims for payment of funeral or estate administration expenses.  While he acknowledged the significance of Torzewski's guardianship services, which restored ownership of Scheller Properties and the property to the decedent, the judge found that "the property was essentially valueless at the time."  Torzewski's most substantial services included arranging the sale of the easement, which "gave some liquidity to the [e]state," negotiating with the mortgage creditors, and selling the property, all of which occurred after the decedent's death, when Torzewski no longer worked at B & T.  The judge also explained that "the extent that the income from the billing which occurred while . . . Torzewski was employed by [B & T] was not distributed properly within the firm is not properly before this [c]ourt," as "[t]he individual appointed [as guardian] carries the applicable fees and bills," not a firm.

The judge explained that the costs Torzewski incurred in performing the post-death services were entitled to priority over pre-death liabilities. In addition to prioritizing Torzewski's post-death claims, the judge found that the post-death claims of Brady & Correale, LLP and Sal LaGreca, LLC, incurred because of their roles in administering the estate, were also entitled to priority. Accordingly, the judge ordered that the remaining estate funds be distributed between these three creditors on a pro rata basis. This appeal ensued.

On appeal, the Borteck firm relies on equitable principles and argues that its claim should be given the same, if not higher, priority than the claims of the post-death creditors. The Borteck firm also contends that the judge should have sanctioned Torzewski for selling the property without a court order and for disbursing some of the estate funds to other creditors. We disagree with both arguments, and we affirm substantially for the reasons stated by Judge Minkowitz in his May 10, 2019 statement of reasons. We add the following.

Our review of a trial judge's factual findings is limited, as "[f]indings by the trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence." Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974). However, we review questions of law de novo.

See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

There is no dispute that Torzewski, Sal LaGreca, LLC, and Brady and Correale, LLP are post-death creditors, while the Borteck firm is a pre-death creditor. The governing statute provides that where an estate is insolvent, funds shall be disbursed in the following order:

a. Reasonable funeral expenses;

b. Costs and expenses of administration;

c. Debts for the reasonable value of services rendered to the decedent by the Office of the Public Guardian for Elderly Adults;

d. Debts and taxes with preference under federal law or the laws of this State;

e. Reasonable medical and hospital expenses of the last illness of the decedent, including compensation of persons attending him;

f. Judgments entered against the decedent according to the priorities of their entries respectively;

g. All other claims.

[N.J.S.A. 3B:22-2.]

Because the statutory language is clear, we apply it as written. See DiProspero v. Penn, 183 N.J. 477, 492 (2005) ("It is not the function of [the courts] to

10

'rewrite a plainly-written enactment of the Legislature []or presume that the Legislature intended something other than that expressed by way of the plain language.'" (second alteration in original) (quoting O'Connell v. State, 171 N.J. 484, 488 (2002))). Therefore, we conclude that the judge properly prioritized the post-death creditors' claims over the Borteck firm's claim.

We recognize, as did Judge Minkowitz, the significance of the services that Torzewski provided as the decedent's guardian. However, these services alone generated no value to the decedent, and we find that they did not create such extraordinary circumstances warranting equitable relief. See Monmouth Lumber Co. v. Indem. Ins. Co. of N. Am., 21 N.J. 439, 451 (1956) ("While it is true that in ordinary circumstances equity follows the law and will not divest rights that have been legally acquired, that doctrine must yield if extraordinary circumstances or 'countervailing equities' call for relief." (quoting Camden Tr. Co. v. Handle, 132 N.J. Eq. 97, 108 (E. & A. 1942))). Moreover, even if such circumstances existed, any fees awarded for Torzewski's guardianship services would be disbursed to him, not the firm he hired to assist him with his guardianship duties. See N.J.S.A. 3B:18-6 (explaining that a "fiduciary [that] is a duly licensed attorney . . . and shall have performed professional services in addition to his [or her] fiduciary duties" may be awarded counsel fees); N.J.S.A.

52:27G-32 to -33 (discussing requirements for individuals to serve as guardians).

Additionally, we find no merit in the Borteck firm's contention that the judge should have sanctioned Torzewski for selling the property without a court order and for disbursing some of the estate's funds to satisfy certain priority creditors' claims. Even if we found these actions problematic, the Borteck firm's creditor status would remain the same, and it would still not receive payment, as the value of the priority creditors' claims substantially exceeds the remaining value of the estate.

To the extent that we have not addressed the parties' remaining arguments, we conclude that they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4129-18T2